United States District Court
Southern District of Texas
**ENTERED**
January 10, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

REMUS  LITOIU,                            §
                                          §
         Petitioner,                      §
VS.                                       §    CIVIL ACTION NO. 2:17-CV-211
                                          §
LORIE  DAVIS,                             §
                                          §
         Respondent.                      §

## MEMORANDUM AND RECOMMENDATION

Petitioner, Remus Litoiu, is a Texas state prisoner currently incarcerated in the Polunsky Unit of the Texas Department of Criminal Justice, Institutional Division in Livingston, Texas.  Proceeding *pro se*, he filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 12, 2017 challenging his 2013 San Patricio County murder conviction.[1]   (D.E. 1).   Respondent filed a Motion for Summary Judgment with Brief in Support on September 6, 2017 to which Petitioner filed a response on December 7, 2017.  (D.E. 15 and D.E. 21).  For the reasons stated below, it is respectfully recommended that Respondent's Motion for Summary Judgment be **GRANTED** and Petitioner's claim for habeas corpus relief be **DISMISSED**.

---

[1]The petition was signed on June 12, 2017, and received by the Court on July 31, 2017.  *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) (A *pro se* prisoner's "habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.")

## I.      JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254.  A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).  Jurisdiction is proper in this Court because Petitioner was convicted in San Patricio County, Texas, which is within the Southern District of Texas.   28 U.S.C. § 124(b)(6); 28 U.S.C. § 2241(d); *Wadsworth*, 235 F.3d at 961.

## II.     BACKGROUND

On August 16, 2013, Petitioner was convicted of murder in the 36th Judicial District Court of San Patricio County, Texas, cause number S-13-3012CR, and sentenced to 75 years imprisonment.  (D.E. 1, Page 2 and D.E. 13-10, Page 79).  Petitioner's conviction was affirmed by the Thirteenth Court of Appeals on July 30, 2015.  (D.E. 13-1).  The Court of Criminal Appeals refused Petitioner's petition for discretionary review on December 16, 2015.  (D.E. 13-9).  Petitioner filed an application for a state writ of habeas corpus on November 14, 2016.  (D.E. 13-24, Page 24).  The Court of Criminal Appeals denied the application without written order on March 8, 2017.  (D.E. 13-23).

Petitioner filed the pending federal habeas action on June 12, 2017.  (D.E. 1). Respondent filed a Motion for Summary Judgment on September 6, 2017.  (D.E. 15). After an extension, Petitioner filed his Response on December 4, 2017 titled "Petitioner's Objection to Respondent's Motion for Summary Judgment with Brief in Support."  (D.E. 21).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Generally, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment procedure, applies with equal force to federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus…").  However, Rule 56 applies only to the extent that it does not conflict with the federal rules governing habeas proceedings.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).  Accordingly, § 2254(e)(1), mandating that a state court's findings are presumed to be correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant.  *Smith*, 311 F.3d at 668.  Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court.  § 2254(e)(1); *id.*

**B.      Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. §2254**

Federal habeas corpus petitions are governed by the AEDPA.  Relief shall not extend to a prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3) & § 2254(a); *Brecht v. Abrahamson* 507 U.S. 619, 633-34 (1993).  Under AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies the principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Although "unreasonable" is difficult to define, the Court noted it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous"

application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, U.S. 362 at 412-13).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, that state court's decision.  If a decision by a state court is silent as to the reasons for the denial, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).[2]  Then, the federal habeas court must ask whether it is possible that fair minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S. Ct. at 786.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  *Id*.  (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

This standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops short of the imposing a complete bar on federal court litigation of claims already rejected in state proceedings…It preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther." *Harrington*, 131 S. Ct. at 786.  "[A] state

---

[2]The Court of Criminal Appeals has explained that in its writ jurisprudence, a "denial" signifies the Court addressed and rejected the merits of a particular claim.  *Bledsue*, 188 F.3d at 257 (citing *Ex parte Thomas,* 953 S.W.2d 286, 289 (Tex.Crim.App.1997)).

prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Id.* at 786-787.

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

### C.     Sixth Amendment Right to Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*. 466 U.S. 668 (1984). Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense. *Id.* at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Petitioner must prove he was prejudiced by his attorney's substandard performance, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Petitioner

then "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id*. at 690.

An ineffective assistance of counsel claim raised in a habeas petition must therefore be analyzed under both the *Strickland* and § 2254(d) standards. As these standards are both highly deferential, when the two apply in tandem, judicial review is "doubly" so. *Harrington*, 131 S. Ct. at 788 (citations omitted). The federal habeas court

asks not whether defense counsel's performance fell below *Strickland*'s standard, but whether the state court's application of the *Strickland* standard was unreasonable. *Id.* at 785. "Under AEDPA…it is a necessary premise that the two questions are different." *Id.* Because the *Strickland* standard is a general one, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough*, 541 U.S. at 664). Thus, where § 2254(d) applies to a *Strickland* claim, habeas relief is appropriate only when the petitioner shows there is no reasonable argument that counsel's performance satisfied *Strickland*'s deferential standard. *McCoskey v. Thaler*, 478 F. App'x 143, 152 (5th Cir. 2012).

Considering the above legal authorities, the undersigned has reviewed the merits of the Petitioner's claims and Respondent's Motion for Summary Judgment.

## IV.  PETITIONER'S ALLEGATIONS OF ERROR

Petitioner raises several grounds for relief, all based on alleged ineffective assistance of counsel. Specifically, Petitioner alleges his trial counsel, John Gilmore and James Granberry, were ineffective in their failure to:

1. Investigate and understand the elements of the charged offense and preserve Petitioner's complaint regarding law enforcement's failure to comply with Sections 573.001 and 573.002 of the Texas Health and Safety Code;

2. Object to the statements of a venire member during voir dire;

3. Object to photographs introduced by the State;

4. Investigate and present a defense based on Petitioner's mental health history during the guilt/innocence stage of trial; and

     5.  Investigate and call expert witnesses and present additional evidence during both the guilt/innocence and punishment stages of trial.

(D.E. 1, Pages 6-7).  The undersigned recommends each of these arguments is without merit, as discussed below.

## V.    DISCUSSION

### A.    Counsel were not ineffective for failing to raise issue of law enforcement's alleged failure to comply with Sections 573.001 and 573.002 of Texas Health and Safety Code.

Petitioner asserts that law enforcement's failure to follow §§ 573.001 and 573.002 violated his due process rights by depriving him of the ability to establish his mental state at the time of the offense, and that counsel erred in failing to preserve a complaint to this effect for appellate review.  (D.E. 1, Page 6).

Section 573.001 provides that a peace officer may, without a warrant, restrain a person the officer believes to be mentally ill and who presents a substantial and immediate risk of harm to that person or others.  The officer must then transport that person to the nearest suitable mental health facility.  Tex. Health & Safety Code Ann. § 573.001(a) and (d); *Pena v. Givens*, 637 F. App'x 775, 776 n.1 (5th Cir. 2015).  Section 573.002 requires the peace officer to file a notification of detention after transporting the person to a mental health facility pursuant to § 573.001.  Tex. Health & Safety Code Ann. § 573.002(a).

Petitioner argues the officers who arrested him at the scene of the crime committed error in failing to take Petitioner immediately to a mental health facility.  However, it is unclear whether § 573.001 imposes such a duty upon officers.  The

permissive language of § 573.001(a) appears to authorize, rather than require, an officer to take into custody a mentally ill person who seemingly poses a threat to himself or others. *See, e.g. Martinez v. Smith*, 200 F.3d 816 (5th Cir. 1999) (describing § 573.001(a) as *authorizing* a peace officer to take individual under custody without a warrant) (emphasis added); *Pena*, 637 F. App'x at 776 n.1 ("[§ 573.001(a)] *allows* a police officer to take a person into custody without a warrant") (emphasis added).[3]  Thus, it is not at all apparent police were obligated to take Petitioner immediately to a mental health facility under § 573.001.

Further, the Supreme Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success. *Knowles*, 556 U.S. at 123.  Because the statute did not clearly impose a duty upon officers, counsel reasonably could have believed that the officers conducted themselves in accordance with the law in the context of Petitioner's arrest.  Consequently, Petitioner cannot show counsel's performance "fell below the objective standard of reasonableness" in failing to challenge the officers' conduct.  *See Givens v. Cockrell*, 265 F.3d 306, 309 (5th Cir. 2001) (petitioner could not show counsel's failure to object was deficient

---

[3]Regarding Texas state court interpretations, the Texas Supreme Court remarked § 573.001 "provid[ed] that a peace officer may initiate emergency detention proceedings without first obtaining a warrant." *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 111 (Tex. 2013).  The Court of Appeals of Texas, El Paso has suggested that under § 573.001, peace officers have a duty to investigate the circumstances surrounding a mental health call where a mentally ill person is threatening to harm himself.  *Trevino v. State*, 512 S.W.3d 587, 594-95 (Tex. App. 2017).  Even there, however, the Court described § 573.001(a) as "allowing" a peace officer to take a person into custody.  *Id.* at 594.  Further, it is not clear whether the circumstances envisioned by the Texas Court of Appeals in *Trevino* were present in Petitioner's case.

performance where Texas law was unsettled and counsel reasonably could have believed the law permitted the introduction of certain evidence).

In rejecting Petitioner's assertion that counsel performed deficiently, the undersigned need not decide whether Petitioner suffered prejudice, which Petitioner contends is the lack of a mental health examination following his arrest. (D.E. 2, Page 12). However, Petitioner's position would fail under this prong as well, because even if Petitioner was immediately taken to a mental health facility and received a psychiatric evaluation on the day of his arrest, it is purely speculative whether the psychiatrists' opinions would have supported an insanity defense. In fact, Petitioner's proffered psychiatrist, Dr. Carlos Estrada, testified Petitioner was not legally insane. (D.E. 13-16, Page 96).

Petitioner has not shown a significant likelihood the result in the state court would have been different had counsel raised the issue of officers' compliance with §§ 573.001 and 573.002. The undersigned therefore recommends the state court did not unreasonably apply *Strickland* in finding Petitioner's counsel were not ineffective for failing to raise noncompliance with §§ 573.001 and 573.002 of the Texas Health and Safety Code at trial.

### B.    Counsel were not ineffective for failing to object to statements of venire member.

Petitioner alleges counsel were ineffective for failing to object to and "take corrective action" regarding allegedly prejudicial statements made by a member of the venire during voir dire, which in turn deprived Petitioner of his Sixth Amendment

guarantee to an impartial jury.  (D.E. 1, Page 6; D.E. 2, Page 18).

The record reflects one of the prospective jurors ("Prospective Juror 32") knew Petitioner from work.  The following exchange took place:

> Defense counsel:  Does [sic] anybody, because of what they heard about the case, already formed an opinion on the case? …
> Prospective Juror 32:  Where did he work at?  Are you talking about the one that worked at Kiewit that killed his wife in the apartment?  I work side by side with him.
> Defense counsel:  So you know [Petitioner]?
> Prospective Juror 32:  Yes.  From a different country?
> Defense counsel:  Yes, Romania.
> Prospective Juror 32:  He worked with me; he's an engineer.

(D.E. 13-13, Pages 46-47).  Prospective Juror 32 also stated he thought he "probably" could not be fair and impartial in the case.  (D.E. 13-13, Page 47).  He was then struck for cause (D.E. 13-13, Page 65) (juror number 32 struck for cause) and consequently did not sit on the jury that decided Petitioner's case.

Petitioner asserts the above exchange "polluted the minds of the jurors" and set their minds to a guilty verdict before the trial even began.  (D.E. 21, Page 3).  However, the right to a fair trial does not entitle a criminal defendant to a jury wholly ignorant of the facts surrounding the case.  *United States v. Dozier*, 672 F.2d 531, 545 (5th Cir. 1982).  Important cases can be expected to arouse the interest of the community, and hardly any prospective juror will not have some impression or opinion about the case. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  The mere existence of any preconceived notion as to the guilt or innocence of the accused, without more, is insufficient to rebut the presumption that a prospective juror is impartial if the juror can lay aside his or her

impression and render a verdict based solely on the evidence presented in court.  *Willie v. Maggio*, 737 F.2d 1372, 1379 (5th Cir. 1984) (citing *Irvin*, 366 U.S. at 723).

Here, each juror took an oath that he or she would decide the case solely on the law and evidence presented.  (D.E. 13-13, Page 69) (jury sworn in).  That the jury convicted Petitioner and sentenced him to 75 years imprisonment does not constitute evidence that the jurors were unfairly biased based on Prospective Juror 32's isolated remark.  Further, whether Petitioner committed the homicide was not at issue in the case, but rather whether Petitioner suffered from a severe mental defect such that he was not guilty of murder.  Thus, Prospective Juror 32's comment that Petitioner had "killed his wife" did not expose the jury to information they would not already learn from the evidence at trial.  As a result, Petitioner cannot show prejudice.

Petitioner offers nothing to support his conclusory assertions that he was deprived of his right to an impartial jury, and that had his counsel taken action to mitigate the perceived damage of the remark, there was a reasonable probability the outcome of his trial would have been different.  Therefore, it is recommended that the state court's rejection of Petitioner's ineffective assistance claim on this ground was not an unreasonable application of *Strickland*.

### C.  Counsel were not Ineffective for Failing to Object to Inflammatory Photographs Introduced by State.

Petitioner alleges counsel were ineffective for failing to object to any of the 10 photographs of the crime scene introduced by the State, labeled State exhibits ("SX") 1 through 10.  (D.E. 1, Page 6).  Petitioner alleges SX 1 through 10 were highly

inflammatory and unfairly prejudicial, particularly a photograph of Petitioner in handcuffs. (D.E. 2, Pages 21-22; D.E. 21, Page 4).

Under Texas law, photographs are admissible regardless of their inflammatory nature if they are competent, material, and relevant, unless they are offered solely to inflame the minds of the jury. *Woods v. Johnson*, 75 F.3d 1017, 1038 (5th Cir. 1996). The photographs at issue here illustrate the crime scene: various rooms in the Petitioner's home containing droplets and pools of blood, the murder weapon – a knife, found by the bathroom sink, the body of the victim lying face down on the sidewalk, and Petitioner handcuffed on the ground in front of his home, with close-ups of wounds on Petitioner's wrists and hands. (D.E. 13-18, Pages 6-9; D.E. 13-19, Pages 1-6). The photographs are in black and white and not relatively gruesome, and are relevant to the location and manner in which the crime was committed. The photographs were introduced during the examination of a witness, Officer Ronald Fraser, who was employed as a photographer in the investigations division of the Ingleside Police Department and had documented the crime scene. (D.E. 13-14, Page 33). The photographs illustrated Officer Fraser's testimony as he described the scene to the jury. (D.E. 13-14, Pages 33-47). There is nothing to suggest the probative value of SX 1 through 10 was "substantially outweighed" by the danger of unfair prejudice. Tex. R. Evid. 403.

Petitioner also contends the photograph of him in handcuffs at the crime scene violates his constitutional right to the presumption of innocence. (D.E. 21, Page 4). However, Petitioner misunderstands an accused person's "entitle[ment] to the indicia of innocence in a jury trial." *United States v. Theriault*, 531 F.2d 281, 284 (5th Cir. 1976).

The legal authority to which Petitioner cites supports the proposition that a criminal defendant has the right, *during trial*, to remain free of physical restraints that are visible to the jury, i.e. not to be shackled in the presence of the jury. *Deck v. Missouri*, 544 U.S. 622, 628-29 (2005) (emphasis added). Petitioner offers no support for his argument that the jury seeing photographs of him in handcuffs intrudes upon the presumption of innocence.

Petitioner has therefore not shown that his counsel's performance was deficient in failing to object to the introduction of SX 1 through 10 or that an objection would have resulted in its being excluded. The Fifth Circuit has refused to find ineffective assistance of counsel where counsel failed to make an objection that would have been meritless. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *see also Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir.1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted). Consequently, it is recommended that the state court's rejection of Petitioner's ineffective assistance claim based on counsel's failure to object to the above evidence was not an unreasonable application of *Strickland*.

> **D.** **Counsel were not ineffective for allegedly failing to investigate Petitioner's mental health history or prepare and present a defense based on Petitioner's mental condition.**

Petitioner alleges counsel were ineffective in failing to properly investigate and develop at trial a defense based on his mental health. (D.E. 1, Page 7). Petitioner criticizes counsel for calling only one expert witness to testify regarding his mental state, a witness whose testimony, according to Petitioner, turned out to be not as favorable for the defense as anticipated. (D.E. 2, Pages 23-30).

There is no expectation that competent counsel will be a "flawless strategist," and as such an attorney may not be faulted for a reasonable miscalculation or lack of foresight. *Harrington*, 562 U.S. at 110. In evaluating an ineffective assistance claim, the reviewing court must make every effort to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *see also Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (merely disagreeing with counsel's trial strategy provides no basis for a court to find ineffective assistance). The failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice. *Taylor v. Maggio,* 727 F.2d 341, 347 (5th Cir. 1984).

The defense called Dr. Carlos Estrada, a psychiatrist, to testify as to Petitioner's mental state at the time of the crime. Dr. Estrada testified that his psychiatric examination, which took place about four months after the crime, consisted of a two-and-a-half hour interview of Petitioner and a review of police reports, a dash-cam video of Petitioner walking in his underwear in the park, as well as the medical records from other physicians who had examined Petitioner in the months surrounding the crime. (D.E. 13-16, Page 74). There is no indication in the record that Dr. Estrada was not provided with all the information he needed to make his diagnosis. Dr. Estrada opined that Petitioner suffered from "a major depression with psychotic features." (D.E. 13-16, Page 74). He went on to define psychosis as "irrational…[a] break with reality." (D.E. 13-16, Page 77). Dr. Estrada testified that Petitioner reported he "didn't think about anything" when he committed the crime, but that four months later, "of course he realized that he had done something wrong." (D.E. 13-16, Pages 89, 96). Dr. Estrada was not able to

definitively say Petitioner was legally insane – i.e. as a result of severe mental disease or defect that Petitioner did not know his conduct was wrong – during the commission of the crime. (D.E. 13-16, Pages 96-97).

Despite Petitioner's contention that counsel had not "adequately prepared" Dr. Estrada for trial (D.E. 2, Page 30), Petitioner's counsel were aware Dr. Estrada was not going to provide a diagnosis that would meet the criteria for insanity under Texas law. (D.E. 13-16, Pages 83, 88).   Through Dr. Estrada, counsel were trying to introduce evidence to support a finding that Petitioner acted under an irresistible impulse or sudden passion, and/or that he was suffering from diminished capacity.  (D.E. 13-16, Pages 82, 88, 93).   Presumably, counsel decided it would be a superior trial strategy to call Dr. Estrada to present this evidence of Petitioner's mental state, even knowing Dr. Estrada would not declare Petitioner to be insane.

Petitioner seems to assert that his counsel's only strategy at trial was attempting to convince the jury of his insanity, and that when counsel failed to present sufficient evidence of insanity through Dr. Estrada's testimony, they performed deficiently.  (D.E. 2, Page 24).  However, this was not counsel's only strategy nor the sole purpose of Dr. Estrada's testimony.   Petitioner's counsel requested the lesser included offense of aggravated assault to be included in the jury instructions, as well as an instruction on second degree murder, sudden passion, both of which the trial court denied. (D.E. 13-16, Pages 101-102; D.E. 13-17, Pages 22-25).   It is possible Dr. Estrada's testimony regarding Petitioner's disturbed mental state could have influenced the jury to convict Petitioner of a lesser charge had the trial judge allowed these instructions.  Regardless,

Dr. Estrada's testimony conveyed in detail Petitioner's deteriorated mental health around the time of the crime, which the jury took into consideration in deciding their verdict. Dr. Estrada's testimony was not, therefore, without value for the defense, as Petitioner seems to suggest.

In light of the grisly nature of the crime, the fact that Petitioner testified to having committed the act "in a rage" (D.E. 13-16, Page 66) and was afterwards "very sorry" for what he had done (D.E. 13-16, Pages 63-64, 71, 96), Petitioner's counsel legitimately might have concluded that Petitioner was unlikely to be acquitted of murder by reason of insanity and so instead focused their efforts on potentially mitigating factors as discussed by Dr. Estrada. *See Johnson v. Cockrell*, 301 F.3d 234, 239-40 (5th Cir. 2002) (in light of high chance of defendant's receiving death penalty anyway due to other aggravating factors, counsel's risky and ultimately failed strategy of calling victim's father to the stand was not unreasonable professional assistance). Likely the reason Petitioner's counsel did not present a witness who would testify Petitioner was insane was because there was no such witness. Petitioner has not identified any such witness nor offered any evidence to support a finding of insanity, and in so doing has not overcome the presumption that his counsel's decision was strategic. *Strickland*, 466 U.S. at 689.

In retrospect, counsel's strategy to rely on Dr. Estrada's testimony was unsuccessful, but as it fell within the wide array of reasonable trial strategies, such a failure does not demonstrate deficient performance. Accordingly, it is recommended that the state court's rejection of Petitioner's ineffective assistance claim on the basis of counsel's failure to adequately present a defense based on Petitioner's mental health was

not an unreasonable application of *Strickland*.

      **E.**      **Counsel were not ineffective for not calling additional expert witnesses.**

Petitioner alleges counsel were ineffective in failing to "investigate, subpoena, interview and call key expert witness" – specifically Dr. Brian Burch, Dr. Nestor Praderio, Dr. John Hopper, and Dr. Antonio Lykos during the guilt/innocence phase, and Sgt. Manuel Serna and correctional officers John Flores and Esteban Loredo during the punishment phase – "and present additional mitigating evidence" during both the guilt/innocence and punishment stages.  (D.E. 1, Page 7).

The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative.  *Coleman v. Thaler*, 716 F.3d 895, 906 (5th Cir. 2013); *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).  A petitioner who alleges ineffective assistance of counsel based on counsel's failure to call either a lay or expert witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to the particular defense."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *see also Evans v. Cockrell*, 285 F.3d 370, 377-78 (5th Cir. 2002) (rejecting uncalled expert witness claim where petitioner failed to present evidence of what an expert would have stated); *see also Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (mere speculation about what a witness might say cannot support a claim that trial counsel was ineffective).

Petitioner states Dr. Burch examined him following his suicide attempt on July 27, 2012, around which time Petitioner asserts his mental health began to deteriorate, and would have been able to testify to Petitioner's mental and physical condition at that time. (D.E. 2, Pages 30-31).   Dr. Praderio, a psychiatrist, evaluated and treated Petitioner during his hospitalization following his suicide attempt, and his report is included in the record with Petitioner's state habeas application.  (D.E. 2, Page 31; D.E. 13-24, Pages 79-81).  Petitioner asserts an additional psychiatrist, Dr. Hopper, examined him in the fall of 2012, and could presumably attest to Petitioner's mental health status at that time.  (D.E. 2, Page 31).   Finally, Petitioner asserts Dr. Lykos examined Petitioner on or about October 22, 2012, approximately one day before the crime was committed, and therefore would have been helpful to his case in being able to testify to Petitioner's mental and physical state near the time of the crime.  (D.E. 2, Page 32).

Despite Petitioner's beliefs about what these additional witnesses may have testified, Petitioner has failed to establish the content of any these witnesses' proposed testimony.  "Ordinarily, a defendant's failure to present some evidence *from the uncalled witness* regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim."  *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) (emphasis in original).   Here, the only evidence of what the doctors would have testified comes from Petitioner, not from sworn affidavits from the potential witnesses themselves.  (D.E. 2, Pages 30-35).  *See Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (the Court views claims of ineffective assistance with great caution where the only evidence of a missing witness's testimony is from the defendant).

Nor has Petitioner provided affidavits from the witnesses indicating they would have been willing to testify at Petitioner's trial.[4]

Additionally, it appears the evidence Petitioner wished to see introduced through these witnesses was largely presented at trial through Dr. Estrada's testimony. As noted above, the defense called Dr. Estrada to testify regarding his psychiatric evaluation of Petitioner. (D.E. 13-16, Page 73). Dr. Estrada partially based his opinion of Petitioner's mental health on the content of the reports of Dr. Praderio, Dr. Hopper, and Dr. Lykos. (D.E. 13-16, Pages 74, 92). Dr. Estrada also testified specifically that Dr. Praderio's diagnosis of Petitioner was "major depression, not psychotic." (D.E. 13-16, Page 76). The report Petitioner attributes to Dr. Burch supports the conclusion Petitioner was depressed and suicidal, but does not suggest he was insane under Texas law. (D.E. 2, Page 31). At the time of trial, Dr. Estrada had been a physician for over 50 years, had testified as an expert witness in the field of psychiatry numerous times (D.E. 13-16, Pages 72-73), and so Petitioner's counsel could have decided he would be the most favorable witness on the stand. Counsel could have considered it redundant or otherwise unfavorable to call additional witnesses to testify. As Petitioner has not offered any evidence to the contrary, the undersigned must presume counsel's decisions were the product of reasoned strategy. *Strickland*, 466 U.S. at 689.

---

[4]Petitioner states Dr. Hopper and Dr. Lykos were both subpoenaed for trial. (D.E. 2, Page 33). However, the undersigned was unable to locate in the record the "Case Summary in Vol. 7 Exhibits" to which Petitioner cites as containing a list of persons subpoenaed for trial. (D.E. 2, Page 33; D.E. 21, Page 9). However, it is immaterial whether these doctors were subpoenaed as they were not called as witnesses to testify and there is no evidence as to what they would have testified had they been called.

Further, with no affidavits demonstrating what the additional witnesses' testimony would have been, it is entirely speculative whether presenting these witnesses to the jury would have been beneficial to the defense, much less whether there is a reasonable probability their testimony would have changed the outcome of the trial.  Consequently, even if counsel's failure to call these witnesses constituted an "unreasonable lapse on the part of counsel," Petitioner cannot show prejudice.  *Schwander*, 750 F.2d at 500.  There is no evidence these witnesses would have supported Petitioner's insanity defense or provide any mitigating punishment testimony.

Regarding witnesses during the punishment stage, Petitioner claims the jail personnel, Sgt. Manuel Serna, Flores, and Loredo, would have been able to attest to Petitioner's behavior while he was in county jail demonstrating his depression – that he was despondent, not eating, and not taking care of his hygiene.  (D.E. 2, Page 34). Petitioner also asserts the medical experts listed above would have provided mitigating testimony.  (D.E. 2, Page 32; D.E. 21, Page 8).

Petitioner was not deprived of effective assistance of counsel by his trial attorneys' decision to omit the jailers' testimony regarding Petitioner's demeanor in jail. Petitioner's punishment witness, Yvette Aguilar, testified to Petitioner's character and demeanor from both before and after the crime.  Ms. Aguilar, the chief prosecutor in municipal court for the City of Corpus Christi, had known Petitioner for several years and considered him as part of her family.  (D.E. 13-17, Pages 9-10).  Based on the several times Ms. Aguilar visited Petitioner in jail following his arrest, she testified there was a drastic decline in Petitioner's mental health, evidenced by such behavior as his refusal to

eat, bathe, and talk, and his general lack of awareness.  (D.E. 13-17, Pages 13-14, 16).
This is the same mitigation evidence Petitioner asserts his counsel should have introduced
through the jailers.  (D.E. 2, Page 35).

The Fifth Circuit has refused to allow the omission of cumulative testimony to
amount to ineffective assistance of counsel under *Strickland*.  *United States v. Harris*,
408 F.3d 186, 191 (5th Cir. 2005); *Murray*, 736 F.2d at 282.  Ms. Aguilar knew
Petitioner well and therefore could provide valuable testimony as to Petitioner's
character.  Indeed, Ms. Aguilar emphasized the dramatic change she saw in Petitioner in
the months surrounding the crime.  Petitioner's counsel could have considered the jailers'
potential testimony as unnecessary.  Even if counsel's decision was erroneous, to show
that a sentencing error was prejudicial, Petitioner would have to demonstrate there was a
reasonable probability that but for the error, his sentence would have been "significantly
less harsh."  *U.S. v. Phillips*, 210 F.3d 345, 351 (5th Cir. 2000) (citing *Spriggs v. Collins*,
993 F.2d 85, 88 (5th Cir. 1993).  This Petitioner has failed to do.  Accordingly, the
undersigned recommends the failure to call additional witnesses to provide cumulative
testimony during the punishment stage did not constitute ineffective assistance.

Petitioner has failed to overcome the "strong presumption" that counsel's decision
in not calling certain witnesses was a strategic one.  *Murray v. Maggio*, 736 F.2d 279,
282 (5th Cir. 1984).  Nor has Petitioner established that the witnesses would have
testified favorably to his case.  Petitioner has thus failed to make the required showing
that the state court's rejection of his ineffective assistance of counsel claim was an
unreasonable application of *Strickland*.

## VI.    RECOMMENDATION

For the reasons stated above, the undersigned respectfully recommends Petitioner's claim be **DISMISSED** and Respondent's Motion for Summary Judgment be **GRANTED**. (D.E. 15).

Respectfully submitted this 9th day of January, 2018.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).